IN THE UNITED DISCTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| DAVID JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 3:23-CV-00496 |
| ) | Judge Crenshaw |
| ) | Magistrate Judge Frensley |
| JOE B. BEASLEY & ASSOCIATES, L.P. ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTORY STATEMENT

A. The Plaintiff (an acknowledged ADA "tester") purports to assert a cause of action against the Defendant based exclusively on the Title III provisions of the *Americans with Disabilities Act,* 42 USC §12181 et seq ("The ADA") and related regulations. For the reasons discussed below, the Defendant responds with a request for dismissal, due to: (1) a Rule 12 "failure to state a claim;" and, (2) a Rule 56 claim that no genuine issues of material fact exist. The legal authorities cited below support dismissal of the claims, with prejudice, and assessment of attorney fees and costs to Mr. Jordon.

B. Concisely summarized, it is the Defendant's position that the case is the product of a patently unethical business model formulated by the Plaintiff's attorneys, who purport to represent tester "David Jordan" in a request for relief that is sharply limited by the provisions of Title III of the ADA. Broadly stated, it is the Defendant's position that a Title III ADA Plaintiff may seek from the Court **only** two things:

(1) An injunction from the Court to order correction of any confirmed ADA technical deficiency in a Defendant's commercial property; and

(2) The attorney's fees **"associated with"** and <u>necessarily</u> incurred in forcing a recalcitrant business owner's technical compliance with the ADA. **No form of compensatory damages or other monetary relief is lawfully permitted by Title III of the ADA.**

C. The key component to the Defendant's Motion for Dismissal may be best framed in the form of a rhetorical question: What if a Defendant's alleged "technical violations" are minimal, and quickly remedied? What occurs under Title III, when a targeted Defendant is placed on notice of a minor, easily-remedied ADA violation, and immediately takes conscientious steps to bring the property into full ADA compliance? Since the ADA limits the attorney's fees to only those **"associated with"** the litigation that brings a recalcitrant Defendant into compliance, is there any circumstance in which a "Plaintiff-tester's" attorneys may legally or ethically receive from the targeted Defendant thousands of dollars in vaguely-described payments?

D. The above scenario is exactly the case in the present matter. While the Beasley property will be shown to be legislatively "exempt" due to its age and the absence of any modifications or improvements, that discussion is far-secondary to Defendant's argument that the Plaintiff, through his counsel, has adopted an unethical, illegal business model that works against the very worthy purposes of the ADA, and in fact, constitutes an impediment to those purposes. The Plaintiff's counsel effectively requests this Court's adoption, ratification, and perpetuation of what amounts to a patent abuse of Title III of the ADA, for their own financial benefit, in a manner that works directly against the good purposes of Title III of the ADA.

E. A second component of the Defendant's motion for dismissal will be predicated upon the failure of the Complaint to properly assert standing (from a FRCP Rule 12 perspective) and

will be predicated on the Defendant's argument that, in order for Mr. Jordan to possess "standing" to make the conclusory claims in the Complaint, he must set forth at least some facts that might plausibly demonstrate "concrete harm," rather than a mere conjectural, speculative ("maybe someday") theoretical injury. In doing so, Defendant notes that the case of *Laufer v. Acheson Hotels, LLC*[1], 50 F.4th 259 (1st Cir. 2022), was argued before the United States Supreme Court this past week, on October 4, 2023, and the ruling on the substantive aspects of that issue may provide long-range assistance in understanding what is necessary for Title III ADA standing. But, independent of that eventual decision on the substantive aspects of Title III standing, the Plaintiff's Complaint should fail under the FRCP Rule 12 pleading standards, however broadly or narrowly the U.S. Supreme Court eventually interprets the requirements for standing.

F. **"Joe B. Beasley & Associates, L.P."** (hereafter, "Beasley") is a small, family-operated commercial business property owner in Murfreesboro. Beasley, like numerous other local businesses, has fallen victim to what amounts to an unethical, unwinnable shakedown. The practice is calculated by Plaintiff's attorneys to place the many frightened demand letter recipients in a no-win position of expense and risk, regardless of the truth about the business owner's ADA compliance, or despite any willingness by the recipient to promptly and immediately accomplish what Title III is intended to achieve: immediate, quick compliance with the ADA statutory access requirements for the properties.

G. The business model adopted by Ms. Hutto, and her Memphis firm of Wampler, Carroll, Wilson, and Sanderson, P.C., involves the following:

    (1) Forwarding to the targeted victim a letter announcing that the targeted Defendant is in violation of the law, with that letter being accompanied by a pro-forma "cut and

---

[1] *Laufer v. Acheson Hotels*, *LLC,* 50 F.4th 259 (1st Cir., October 5, 2022). Certiorari granted March 27, 2023, and argued October 4, 2023, pending.

paste" ADA Complaint. The complaint is virtually identical to the dozens of similar complaints filed in the United States District Courts in Memphis and Nashville for a small group of self-described "ADA testers" whose names appear on the complaints as "Plaintiff;"

(2) The alleged "technical deficiencies" are described in broad, inclusive, and ambiguous terms that are notably similar in every such "draft" complaint;

(3) The targeted victim is unethically supplied with tax advice, explaining how the monies to be spent may be subject to substantial tax benefits that will minimize the impact. Those "tax incentives" are ambiguous, and do not adequately note the many exceptions and limitations that are applicable;

(4) Consistently, with every targeted victim, the property owner is advised that it will be necessary for them to immediately pay the Title III **<u>attorney's fees</u>** in the amount of $8,000.00, or more (at a stage where only a standard letter and standard draft Complaint comprise the Plaintiff's attorney's work on the case). Significantly, the initial, introductory letter acknowledges that the Plaintiff's attorneys are entitled to **<u>attorney fees associated with this case.</u>**" (see affidavit, and attached).

(5) At that point, the recipient of the letter and draft Complaint is faced with two unpleasant choices: pay the $8,000.00 to Ms. Hutto and her firm, upon the apparent representation that the $8,000.00 was "associated" with the single letter and Complaint, or alternatively, go to the expense of hiring an experienced federal court attorney to defend the claim. **Quick, immediate correction, with no fees paid, is not an option.**

(6) Then, if the targeted Defendant elects to minimize their future risks by just paying Ms. Hutto the $8,000.00, (as most apparently do) the targeted victim is then presented with a "release/settlement" document. Despite the wording in the Complaint and the

accompanying cover letter (limiting the payment to "attorney's fees associated with the case") **the wording in the release is subtly changed.** The reference to "attorney's fees" is deleted, and substituted in its place, is a reference to a **"payment of $8,000.00 in lieu of any attorney's fees."** That is an interesting substitution, in view of the fact that Title III permits no payment of any money amounts for any reason, with the notable, single exception of "necessary" attorney's fees incurred while producing a recalcitrant business owner into compliance with ADA access requirements.

  H. The net effect of the foregoing observations: knowing that she is not entitled to $8,000.00 in "attorney's fees," Ms. Hutto and her firm effectively request the Court's ratification in defeating the good purposes of the ADA, making paramount what may only be effectively described as a "shakedown," as money, for no apparent reason, is demanded as the only way of avoiding a lawsuit.

  I. The foregoing points are particularly relevant in considering the fact that the Beasley property was "grandfathered" (safe harbored) into the pre-1991 provisions of Title III, and that (regardless of that point) the only possible deficiencies would have involved some faded paint lines on the parking lot, and an ADA parking sign that had been knocked loose from its mounting, (see Morgan Newman affidavit with attachments).

  J. Summarized, Defendant Beasley seeks dismissal of the Plaintiff's Complaint. That dismissal request is preliminarily based upon an inadequate pleading of the jurisdictional "standing" facts under FRCP Rule 12; and secondarily, based upon the affidavit of Ms. Newman, confirming that any minor technical deficiencies were immediately corrected upon receipt of Ms. Hutto's letter, and that no conceivable basis could exist for attorney's fees beyond "associated

with" the writing of the letter and the sending of the "cut and paste" pro-forma Complaint, into which the Beasley name had been inserted.

## II. MATTERS RELIED UPON IN SUPPORT OF THE MOTION

1. The Affidavit of Morgen Newman;
2. Record excerpts;
3. Defendant's Statement of Undisputed Material Facts;
4. A Memorandum of Law, set forth below;

## III. DISCUSSION OF APPLICABLE LEGAL PROPOSITIONS

A. **As a matter of law, Plaintiff is entitled to no Title III ADA monetary relief, including any award of attorney's fees.**

(1) A private Plaintiff is not entitled to any type of money damages under the provisions of the ADA, 42 USCS § 12101, *et seq*., with 42 USCS § 12188(a)(1), limiting remedies available to private individuals to those set forth in the Civil Rights Act of 1964 (42 USCS § 2000(a)-3. Once a private Plaintiff has cited to a potential Defendant any technical deficiencies in ADA compliance, and the Defendant refuses to make the required corrections, then the private Plaintiff may seek injunctive relief to force the corrections to be made. Significantly, for purposes of the present case issues, a Plaintiff may not receive attorney's fees **(or other money)** from an offending Defendant, except to the extent that it can be shown that those fees were necessarily incurred as a result of the recalcitrance of the targeted Defendant. *Goodwin v. C.N.J., Inc.*, 436 F.3d 44 (1st Cir. 2006); *Wander v. Kaus*, 300 F.3d 1107 (9th Cir. 2002).

(2). As will be further discussed, in the "standing" discussion in Defendant's Rule 12 Motion to Dismiss, the Complaint is a pro forma, "cut and paste" document which

inadequately describes any actual technical deficiencies in the Defendant's property, particularly in the context of the Defendant's Affidavit affirming both present compliance, and a "safe harbor" defense. More importantly, the matters addressed in the Defendant's supporting affidavit (with attached documents) confirm that the present Complaint by "David Jordan" is an unlawful contrivance, intended only to generate fees for Ms. Hutto and her firm, rather than to effect the worthy purposes of the ADA.

(3)   The Affidavit confirms two important points: (1) any technical deficiencies in the ADA were minor, and were easily and immediately remedied upon receipt of Ms. Hutto's letter and draft complaint. Easy, immediate correction should have concluded the matter. Instead, the demand focused on the non-negotiable demand that Beasley (like the multiple other Murfreesboro businesses) pay immediately a **(misrepresented)** "attorney's fee" of $8,000.00.

(4)   The Plaintiff firm's apparent standard practice then involves a "settlement release" (Affidavit, Ex. C) that subtly changes the references contained in the letter and complaint from "attorney's fees" to a payment to the firm **"…in lieu of attorney's fees." What ethical or legal reason could explain that change?**   The practice is unethical and illegal, directly abusing the good purposes of the ADA, and utilizing the courts in furtherance of what may only be described as a coercive fee shakedown.

(5)   Supposedly, the submitted complaint is specifically tailored to Beasley's alleged technical deficiencies, but it is obviously copied from the paperwork directed at some previous target. The ambiguous reference to "physical barriers" (Document 1, Complaint, Page 4 of 17) is factually defined nowhere in the Complaint. The word "barrier" appears throughout the Complaint, without a single specific, factual description of what is meant by that generic, conclusory term. There is no "architectural barrier" as referenced in Paragraph 29 of the

Complaint (Document 1, Complaint, Page 8 of 17). The purported "specific list" (Document 1, Complaint, Page 9 of 17) appears to reference the fact that the designated ADA parking spots and the (easily accessible) parking lot for the facility had become faded, and the sign was knocked loose. Those minor technical defects were promptly corrected by Defendant, as reflected in the attached Affidavit.

(6) Paragraph 31(g) (Document 1, Complaint, Page 10 of 17) appears to reference a need for a ramp due to "an uneven inclined approach." Simply stated, that is a fabricated, made-up statement that has no basis in truth. The entirety of the parking lot; the sidewalks; and the building floor are level, easily accessible for a wheelchair. The paragraph 38 allegations may be seen in multiple other complaints filed by Ms. Hutto on behalf of ADA "testers" in both Memphis and Nashville district courts. The supposed "specific" wording in the present Complaint mirrors, in many instances, the "specific facts" in other complaints by their team of ADA testers.

(7) Defendant respectfully insists that there is no issue of material fact that would refute Defendant's claim that (1) any possible technical violations identified in Ms. Hutto's letter were minor, and were easily remedied; (2) being included on Ms. Hutto's mass mailing list for several Murfreesboro businesses should not justify the award of any attorney's fees; and finally (3) payment of an illegitimate, statutorily unpermitted "payment in lieu of attorney's fees" is the true objective behind the preparation and mailing of Ms. Hutto's cover letter and the draft of the complaint. The final point in the "business model" adopted by Ms. Hutto's law firm confirms the true objective. As the draft settlement release confirms, the immediate, unconditional payment of a huge "fee" is the central concern. Once the targeted victim elects to minimize its risk by submitting to the shakedown, there appears to be very little

interest thereafter in securing compliance with the ADA. Literally, the targeted victim (after having paid Ms. Hutto's "fee") must only promise to make the corrective work within a specific time, and to "forward pictures" supposedly confirming that compliance. On such an important, pivotal point in a Title III ADA case, the sanctions or follow-up remedies are not the focus.

**B.   Pre-empting all other issues in the matter, there is no issue of material fact that would refute the Defendant's "safe harbor" defense:**

(1)  Among several false statements contained in the Plaintiff's Complaint (including his civil cover sheet false residency statement) is the allegation in Paragraph 34 of the Complaint (Document 1, Complaint, Page 13 of 17) which states as an affirmative fact that: **"accessible elements at the subject property have been altered and/or constructed since 2010."**

(2)  It appears that the Plaintiff's attorneys disregarded FRCP Rule 11, and just stated a fact with no basis, which could have been confirmed from the public local codes and zoning records.   As the Affidavit of Morgan Newman affirms, there have been no material modifications or alterations to any aspect of the property since its construction in 1990.

(3)  The ADA contains a "safe harbor" in the 2010 ADA regulations for businesses, meaning that the Beasley Defendant was not required to make modifications to elements in a building that comply with the 1991 ADA Standards, even if the 2010 ADA Standards have different requirements for them. On that fact issue, standing alone, Defendant is entitled to Summary Judgment dismissal.

### C. Pursuant to FRCP Rule 12 (b)(6), Defendant moves for dismissal of the Complaint for failure to state a claim upon which relief may be granted:

(1) Particularly in view of the unresolved "standing" issues that are centered on the discussion of what is meant by "concrete harm," the Complaint fails to state a claim upon which relief may be granted. Defendant respectfully insists that, even if the pending U.S. Supreme Court case were to be decided in favor of the "ADA tester" in the *Laufer*[2] case, the lack of any Complaint factual specificity in identifying any ADA violation by the Defendant, would justify a Rule 12 dismissal.

(2) Concisely stated, the Complaint must specifically describe at least <u>some fact</u> to support Title III standing and subject matter jurisdiction. Some specific pleading allegation is necessary. Pro-forma generalities are insufficient.

(3) Review of a Rule 12 Motion that alleges a Plaintiff's failure to state a claim upon which relief may be granted, is governed by the standards outlined in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Motions for Judgment on the Pleadings require that a court construe the complaint in the light most favorable to the Plaintiff, accepting all well-pleaded allegations as true, and drawing all reasonable inferences in favor of the Plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Direct TV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), adopts the "plausibility" standard in reviewing the pleading. *Twombly's* "plausibility" rule is a broadening of the earlier "reasonable-inference" rules that predated that decision (and recently adopted by the Tennessee appellate courts in a favorable discussion in *Reiss v. Rock Creek Construction, Inc.*, 2022 Tenn. App. LEXIS 416, 19). The requirement at the

---

[2] *Laufer v. Acheson Hotels, LLC,* 50 F.4th 259 (1st Cir., October 5, 2022). Certiorari granted March 27, 2023, and argued October 4, 2023, pending.

pleading stage for express allegations "plausibly" stating (not merely consistent with) Plaintiff's theories reflect the threshold requirements of FRCP Rule 8(a)(2) that the "plain statement" must possess enough to "show that the pleader is entitled to relief."

> "When a defendant moves to dismiss pursuant to '12(b)(6),' the plausibility standard articulated in [*Twombly* and *Ashcroft*] governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact 'allow the court to draw the reasonable inference that the defendant is liable.' *Id.* at 678. Although this plausibility threshold is more than a 'sheer possibility' that a defendant is liable, it is not a 'probability requirement.' *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to 'nudge' her claim across the line from conceivable to plausible is a 'context-specific task' requiring this court to 'draw on its judicial experience and common sense.' *Iqbal*, 556 U.S. 679, 683 (quoting *Twombly*, 550 U.S. at 570)." *Best v. Portfolio Recovery Associates, LLC,* 2019 U.S. Distr. LEXIS 30510, 3.

(4) In examining the casual, "cut and paste" Complaint that has been filed against the Defendant in the present matter **<u>(referring to Plaintiff David Jordan as "her," in more than one place (see Paragraph 19, Doc. 1, Page 6)</u>**, the vague references to "physical barriers" and similar terms are without clarifying detail, and should be deemed inadequate under the applicable pleading standard.

(5) In order to obtain relief, a Title III ADA Plaintiff must specify **<u>facts</u>** in the Complaint which meet the definition of **"concrete harm"** in order for the Plaintiff to have standing to assert the claim.

(6) Where may the parties look in an attempt to define their respective positions on the related issues of standing and "concrete harm?" The appellate federal courts around the country have arrived at different conclusions on the Title III standing issues, and, admittedly, the ultimate resolution of that issue by the United States Supreme Court will presumably provide more specific guidance on the topic. While the present Beasley Defendant's argument is not

Page 11 of 14

Case 3:23-cv-00496     Document 24     Filed 10/13/23     Page 11 of 14 PageID #: 82

centered solely upon "standing" and "concrete harm," those topics are relevant to the Rule 12 discussion. Many of the opposing appellate decisions are based on fact-driven inquiries. The range includes the pending *Laufer* case (where an ADA tester sought injunctive relief and attorney's fees due to the alleged inadequacy of a hotel's ADA web-page information) to more direct involvement involving "testers," who assert in their complaint that they encountered "barriers" upon visiting a property, and that they may "someday" return to use the facility. While the overall "standing" issue remains somewhat ambiguous in the federal system, the discussion in *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259 (1st Cir. 2022), concisely explains the problems with the so-called "tester" practice:

> **"The ADA and its regulations offer a route to those themselves suffering an injury by being discriminated against on the basis of their disability. It does not permit anybody to sue just because he/she saw an ADA violation."** *Laufer,* **50 F.4th 259, 277.**

(7) In *Bouyer v. LAXMI Hospitality, LLC,* 2020 U.S. Dist. LEXIS 232634, an ADA tester sued a hotel, and only generically described encountering ADA "barriers." The hotel had no record of any visit, or attempt to check-in, and discounted the Plaintiff's vague statements that he felt "deterred from further attempting to visit the hotel" and that "**some day,**" when the barriers were removed, he might likely return to the hotel. The Court held that **"…these conclusory allegations amount to mere 'some day' intentions that the Ninth Circuit has found are insufficient to establish Article III standing."** *Id*. at 8. So, the outcome in the recently argued (October 4) *Laufer* decision should provide some guidance on the issue of standing, as it relates to **"concrete harm,"** which is harm that is **"real, and not abstract."** *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 340 (2016), clarified that a bare statutory violation not resulting in such concrete harm means there is no case or controversy over which a federal

district court may assert subject matter jurisdiction. If a plaintiff can show a relatively simple technical violation of the myriad of accessibility guidelines, but the violation did not cause the particular plaintiff any concrete harm, the plaintiff should lack standing under *Spokeo* to pursue a claim, and the lawsuit should be dismissed. But, after *Spokeo*, various circuit courts have arrived at differing conclusions in determining the boundaries of that discussion.

## IV.  SUMMARY

The worthy legislative purpose behind the Americans with Disabilities Act in no way contemplates any reason for **"payments in lieu of attorney's fees."** The generation of attorney's fees for no real work is not the goal of the ADA. Prompt and complete remediation is the true legislative goal. Bogus "tester" cases being serially filed by Rebecca Hutto and her firm constitute a perversion of the appropriate purposes of a good law. The "business model" adopted by David Jordan's counsel effectively requests the Court's endorsement of a financial shakedown, intended to circumvent Title III's express rejection of any basis for any monetary damages. In the broader, more technical context, the threshold question in the Defendant's pending motions is rhetorical:   where ADA technical deficiencies are minor, and are immediately corrected (such as repainting the parking lines), under what theory may an attorney demand an up-front fee of $8,000.00, initially misrepresented as a fee **"associated with the case,"** and later subtly changed to **"a payment in lieu of attorney's fees,"** suggesting some type of fee-splitting, or other unethical practice. The Plaintiff's attempt to pervert and circumvent the good purposes of the ADA should not be ratified by the Court. Ms. Hutto's Complaint on behalf of David Jordan should be dismissed, pursuant to FRCP Rule 12, or otherwise, with Beasley's attorney's fees assessed against Mr. Jordan pursuant to TCA §20-12-119 (c)(1).

Respectfully submitted,

**BURGER LAW FIRM**

***/s/ Wm Kennerly (Ken) Burger***
Wm Kennerly (Ken) Burger, BPR #3731
*Attorney for Defendant*
12 North Public Square
Murfreesboro, TN 37130
T: 615-893-8933; F: 615-893-5333
kenburger@comcast.net

**CERTIFICATION OF SERVICE**

    I hereby certify that a true and exact copy of the foregoing was sent to Rebecca J. Hutto, Wampler, Carroll, Wilson, and Sanderson, P.C., 208 Adams Avenue, Memphis, TN 38103 (rebecca@wcwslaw.com) on this the 13th day of October, 2023.

*/s/ Wm Kennerly (Ken) Burger*

cc: Joe B. Beasley & Associates, L.P.
    c/o Morgan Newman (morgannewmansells@gmail.com)