UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DAVID JORDAN,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    Case No. 3:23-cv-00496 |
| | ) |
| **JOE B. BEASLEY & ASSOCIATE, L.P.,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION

Joe B. Beasley & Associates, L.P. ("Beasley & Associates") filed a Motion to Dismiss and for Summary Judgment, seeking dismissal of the Complaint filed by David Jordan ("Jordan") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56 (Doc. No. 24). Jordan responded (Doc. No. 28), and Beasley & Associates replied (Doc. No. 31). The Court heard oral argument on the motion on December 21, 2023. (Doc. No. 40).

During oral argument, the Court questioned Jordan's counsel about conclusory allegations of ADA violations and injury in the Complaint and asked counsel to identify specific, non-conclusory allegations in the Complaint:

> THE COURT: . . . Where in your Complaint does [Jordan] tell me how these violations, technical or otherwise, affected him, you know, when he went to -- when he went to the Avis?
>
> MS. HUTTO: Your Honor, that is not in the Complaint.

(Doc. No. 45 at 25:15-20). Jordan's counsel requested an opportunity to amend the Complaint to include more specific allegations. (See id. at 10:12-18). The Court allowed Jordan's counsel to file a motion to amend the Complaint, but cautioned counsel that:

1

> [Y]ou're going to have to explain – you're going to have to present good cause. And a big threshold you're going to have to address is why you didn't put this in the Complaint to begin with. Because -- you filed the Complaint. You served the Complaint. The defendant has a right to move to dismiss. He's done that. There were all kind of opportunities under Rule 12. You could have said I want to amend. Rule 56, you could have given me [a] 56[d] affidavit. You didn't do any of those things. You responded. He replied. The record's closed. So you're going to have to explain why none of that was done.

(Id. at 27:4-16. See also id. at 10:12-18.). Before ending the hearing, the Court again cautioned Jordan's counsel concerning any motion to amend:

> But again, even before you get to the missing information in the Complaint, there's a big threshold here. And that is why wasn't it done earlier [sic]. Because as I've pointed out, you had multiple opportunities to do so. And you're going to have to give me a good reason for why it wasn't done. . . . And another good reason for why you're just coming up with these new facts after the record is closed. And then I'll – we'll see if you've satisfied the rule in terms of that standard.

(Id. at 30:24-31:7).

Jordan did not heed the Court's instructions. After oral argument, Jordan filed a motion to supplement his response to Beasley & Associates' motion (Doc. No. 41), and included a declaration and three photographs (Doc. Nos. 41-2, 43). Beasley & Associates oppose Jordan's motion to supplement. (Doc. No. 44). The motions are ripe for review. The Court will deny Jordan's motion to supplement his response to Beasley & Associates' motion, deny Jordan's alternative request to amend the Complaint, and grant Beasley & Associates' motion to dismiss.

## BACKGROUND

Jordan is a person with a physical disability who uses a wheelchair. (Doc. No. 1 ¶¶ 6-8). He is also a self-described ADA "tester" and "an independent advocate of the rights of similarly situated disabled persons." (Id. ¶ 9). As an ADA tester, he "monitor[s], determine[es] and ensur[es] whether places of public accommodation are in compliance with the ADA" and files lawsuits when he determines a business is not ADA compliant. (Id.). Jordan has a "desire to

2

utilize ADA litigation to make his home community more accessible for [himself] and others." (Id.)

In September 2022, Jordan visited the Avis Car Rental ("Avis") located at 1631 NW Broad Street, Murfreesboro, Tennessee 37129 as part of his role as an ADA tester, (Id. ¶¶ 11, 17), which is owned by Beasley & Associates. (Id. ¶ 12). Jordan lives within 30 miles of Avis and frequently drives along the road on which is it located. (Id. ¶ 13). He has visited this Avis location on several prior occasions. (Id. ¶ 15).

Jordan alleges that during his September 2022 visit, his "access to the [Avis] and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until [Beasley & Associates] is compelled to remove the physical barriers to access and correct the ADA violations that exist at the [Avis]." (Id. ¶ 14). He further alleges that he "intends to visit the [Avis] again in the very near future as a patron and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, advantages and/or accommodations commonly offered to able-bodied patrons." (Id. ¶ 28).

Based on his visit, Jordan alleges the following "physical barriers" to his access to Avis:

- "There is no van accessible parking present";
- "There is no designated accessible parking space present";
- "There is no access aisle serving the parking spaces closest to the entrance" of the car rental center;
- "There is no van-accessible parking identified as such with upright 'Van Accessible' signage";
- "The [sic] is no visible upright signage (displaying the International Symbol of Accessibility) designating parking spaces as accessible";

3

- "The paint delineating the parking spaces closest to the entrance is not being maintained so that it clearly marks the accessible parking location"; and

- "The paved area immediately outside the purported accessible entrance door has an uneven inclined approach that extends into the minimum level maneuvering clearance required for a wheelchair user to approach and access each entrance's outward swinging entrance door."

(Id. ¶ 31(a)-(g)).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016). However, the Court will "disregard bare legal conclusions and naked assertions" and "afford[] the presumption of truth only to genuine factual allegations." Dakota Girls, LLC v. Philadelphia Indem. Ins. Co., 17 F.4th 645, 648 (6th Cir. 2021) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2007)) (internal quotations omitted). Nor can the Court "credit a threadbare recital of the elements of a cause of action ... supported by mere conclusory statements." Dakota Girls, 17 F.4th at 648 (citing Iqbal, 556 U.S. at 678)) (internal quotations omitted). The "factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Cabinets to Go, LLC v. Qingdao Haiyan Real Est. Grp. Co., 605 F. Supp. 3d 1051, 1057 (M.D. Tenn. 2022) (quoting Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010)), *reconsideration denied sub nom*. No. 3:21-CV-00711, 2023 WL 5013055 (M.D. Tenn. Aug. 7, 2023). "Ultimately, only a complaint that

4

states a plausible claim for relief survives a motion to dismiss." Dakota Girls, 17 F.4th at 648 (quoting Iqbal, 556 U.S. at 679)) (internal quotations omitted). To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of each claim. Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

## DISCUSSION

The Court addresses Jordan's motion first.

### I. Jordan's Motion to Supplement Response or Amend Complaint

The Court warned Jordan's counsel that in filing any motion to amend the Complaint or supplement his response, counsel must show good cause why the Complaint was not amended or additional evidence was not presented prior to responding to Beasley & Associate's motion to dismiss and for summary judgment. (See Doc. No. 45 at 10:12-18, 27:4-16). Jordan's motion to supplement his response does not provide any reason for his delay, nevermind a showing of good cause. (See generally Doc. Nos. 41, 41-1).

Fed. R. Civ. P. 15 requires courts to "freely give leave" to a plaintiff seeking to amend his complaint "when justice so requires." However, a plaintiff's right to amend as of right without showing good cause is limited. See Fed. R. Civ. P. 15(a), 16(b)(4). Nor may a plaintiff amend a complaint at trial if doing so would prejudice the defendant. See Fed. R. Civ. P. 15. Thus, it is clear that, while courts generally allow timely-filed motions to amend the complaint, this practice does not allow plaintiffs to ignore the rules of civil procedure, scheduling deadlines, or prejudice to their adverse parties. That is why courts may deny requests to amend when there is undue delay. See Doe v. Michigan State University, 989 F.3d 418, 426 (6th Cir. 2021). For example, in Doe v. Michigan State University, the Sixth Circuit upheld a district court's denial of a motion to amend

because "the facts that Doe sought to add in his [second amended complaint] were available to Doe at the time of his first amendment, and . . . Doe failed to offer any excuse for omitting them when he first amended his complaint." Id.

Here, Jordan has offered no reason for his failure to offer specific, non-conclusory allegations in his initial Complaint or to amend his Complaint as of right within 21 days of Beasley & Associate's motion to dismiss. See Fed. R. Civ. P. 15(a)(1)(B). Nor has he offered any reason why he could not have filed his declaration and pictures of Avis in his original response to Beasley & Associate's motion. (See Doc. Nos. 41, 41-1). In fact, the declaration contains no information not known to Jordan when he filed his Complaint, (see Doc. No. 41-2), and the pictures of the Avis parking lot appear to be taken before Beasley & Associates filed its motion to dismiss, as the photos do not show the repainted lines and rehung accessible parking sign that Newman attests she did prior to filing the motion to dismiss. (See Doc. Nos. 43-1, 43-2; Doc. No. 25 ¶ 14). Jordan's counsel and other attorneys at her firm have filed more than 80 lawsuits before this Court since 2019. They should be aware of the Federal Rules of Civil Procedure and know how to practice before this Court. Because they have offered no explanation for their failure to properly and timely plead their Complaint, the Court denies their motion to supplement their response to the motion to dismiss and further denies their motion to amend the Complaint. To do otherwise would denigrate the Federal Rules of Civil Procedure and ratify litigation practice outside of the boundaries created by those Rules.

II.   **Beasley & Associate's Motion to Dismiss**

As an initial matter, Beasley & Associates filed its motion to dismiss after answering the Complaint. Though Beasley & Associates styled its motion as a Fed. R. Civ. P. 12(b)(6) motion, the Court will instead examine it as a Rule 12(c) motion for judgment on the pleadings. Walker

v. Sealey, 2015 WL 8055901, at *1 (M.D. Tenn. Dec. 4, 2015). A motion for judgment on the pleadings is "reviewed under the same legal standards as a Fed. R. Civ. P. 12(b)(6) motion to dismiss." Id. (citing Lindsay v. Yates, 498 F.3d 434, 437 n.5 (6th Cir. 2007)).

Beasley & Associates' motion raises both standing and mootness issues, in addition to arguing that the Complaint fails to meet notice pleading requirements. The Court may evaluate standing and mootness in any order. Acheson Hotels, LLC v. Laufer, 144 S. Ct. 18, 21 (2023). The Court will address standing first. Because the Court finds that Jordan does not have standing, the Court need not reach the issues of mootness. The Court will then explain why, if Jordan had standing, his Complaint does not plausibly allege his ADA claim. Finally, the Court will also address Beasley & Associates' allegations that Jordan and his attorneys have engaged in "a patently unethical business model" by abusing Title III of the ADA "for their own financial benefit." (Doc. No. 24 at 1-2).

   1. **Standing**

To sue in federal court, a plaintiff must satisfy Article III standing through pleading "(1) he or she suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendants; and (3) it is likely that the injury will be redressed by a favorable decision." Mosley v. Kohl's Dep't Stores, Inc., 942 F.3d 752, 757 (6th Cir. 2019) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)) (internal quotation marks omitted). Plaintiffs requesting injunctive relief, as Jordan is here, must "show both past injury and a real and immediate threat of future injury." Id. (quoting Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1329 (11th Cir. 2013)) (internal quotation marks omitted).

7

The Sixth Circuit has addressed the standing of so-called ADA tester plaintiffs on at least three occasions. In the first of these cases, Gaylor, a Georgia resident who uses a wheelchair, sued a Toys-R-Us located in Chattanooga, Tennessee "alleging that he observed and encountered barriers to access during [his] visits [to the Toys-R-Us shopping center] that violate Title III of the ADA." Gaylor v. Hamilton Crossing CMBS, 582 Fed. App'x 576, 577 (6th Cir. 2014). Toys-R-Us moved to dismiss Gaylor's lawsuit, arguing that he lacked standing because he did not sufficiently allege that he "had visited or intended to return to" Toys-R-Us. Id. at 578. The district court granted the motion, and the Sixth Circuit reversed. Id. at 578-79, 581. The Sixth Circuit found that "Gaylor has established the requisite threat of prospective injury to seek injunctive relief against [Toys-R-Us] under Title III of the ADA" because he "alleged both that he intends to return as a patron to [Toys-R-Us'] store and that he continues to desire to visit [Toys-R-Us'] store, but genuinely fears that he will continue to experience serious difficulty due to the excessive slopes in [Toys-R-Us'] parking lot." Id. at 580-81. The Sixth Circuit found these allegations "plausible in light of (1) his alleged history of visiting the Chattanooga, Tennessee area; (2) his allegations that he has visited and attempted to patronize [Toys-R-Us's] store numerous times, most recently in January and April 2012; (3) his allegations of past injury in [Toys-R-Us's] parking lot; (4) his allegations setting forth reasons why he makes regular trips to Chattanooga, Tennessee, and why he particularly enjoys visiting the shopping center in which [Toys-R-Us] is located; and (5) his alleged plan to return to the property at the end of the month in connection with a trip to visit his sister-in-law." Id. (internal quotation marks omitted).

In Brintley v. Aeroquip Credit Union, the Sixth Circuit reached the opposite conclusion that it reached in Gaylor. In that case, Brintley, who is blind, sued a credit union because its website is not compatible with screen-reader devices, which "scan[] webpages and narrate[] their

8

content" for blind individuals. 936 F.3d 489, 491 (6th Cir. 2019). Chief Judge Sutton found that Brintley had no standing to sue the credit union because "state law barred her from receiving any of the credit unions' financial services," in light of the membership requirements and her failure to "ma[ke] any efforts to become eligible." Id. at 492. Because she was ineligible to receive the credit union's services, the credit union could not have injured her. Id. Moreover, Brintley failed to meet her "burden to allege some real interest in the information" on the credit union website, and as a result, "deprive[d] [the court] of power over the matter." Id. at 493.

Finally, in Mosley v. Kohl's Department Stores, Inc., the Sixth Circuit found a tester plaintiff did have standing when he sued a department store for alleged ADA violations. In that case, Mosley, who is a wheelchair-bound Arizona resident, alleged that the restrooms at two Kohl's stores located in Michigan were "inaccessible for persons who use wheelchairs." 942 F.3d 752, 755 (6th Cir. 2019). Mosley's standing turned on whether he adequately alleged a likelihood of future harm necessary to request injunctive relief. The Sixth Circuit concluded that "Mosley has sufficiently alleged a plausible intent to return to the [Michigan Kohl's] stores. . . . Although he is a resident of Arizona, he has family and friends that reside in the Detroit area whom he tries to visit at least annually in the summers." Id. at 760. In reaching this conclusion, the Sixth Circuit held that it "do[es] not require plaintiffs to provide a definitive plan for returning to the accommodation itself to establish a threat of future injury." Id. Furthermore, "[i]t is enough to allege an intent to return to the area and an interest in visiting the accommodation in the future when it becomes ADA-compliant." Id. at 759. The court also directly addressed the standing of ADA tester plaintiffs:

> Congress did not intend for ADA tester plaintiffs to be deprived of standing in actions alleging the presence of architectural barriers. If it had, it would have limited the statute's protections to clients or customers, as it did in other provisions of Title III, or it would have imposed a bona fide usage requirement, like that of the

> bona fide offer requirement for housing discrimination suits. Courts may not find
> that a plaintiff's status as an ADA tester undermines the plausibility of future injury.
> Therefore, Mosley's status as an ADA tester does not deprive him of standing here.

Id. at 758 (citing Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1332-34 (11th Cir. 2013) and Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 457 (4th Cir. 2017)) (internal quotation marks and citations omitted).

The Supreme Court recently considered a case concerning standing of ADA tester plaintiffs, acknowledging a split between the circuit courts over whether tester plaintiffs have Article III standing. See Acheson Hotels, LLC v. Laufer, 144 S.Ct. 18 (2023). In that case, the First Circuit Court of Appeals had concluded that the plaintiff, Laufer, suffered an "informational injury" in addition to "feelings of frustration, humiliation, and second-class citizenry," that this injury was particularized, and that, as a result, Laufer had standing to assert her claims. See Laufer v. Acheson Hotels, LLC, 50 F.4th 259, 274-76 (1st Cir. 2022). The First Circuit further concluded that Laufer had plausibly alleged future injury because "she[] alleged her concrete plans to go back to the websites in the near future" and "ha[d] a sophisticated system to continue monitoring the non-compliant websites she f[ound]." Id. at 277. The Supreme Court's majority opinion ultimately found the case to be moot and did not decide the standing issue, but at the same time it vacated the First Circuit's standing opinion with instructions for the court to dismiss the case as moot. Id. at 22.

Justice Thomas wrote a concurring opinion to address the standing issue. He concluded that Laufer did not have standing. Laufer, a resident of Florida, is an ADA tester who "scours the internet for hotel website that do not contain the required accessibility information" and, when she finds such a site, sues the hotel. Id. at 23 (Thomas, J., concurring). Laufer sued a Maine bed and breakfast, "initially alleg[ing] that she was planning to visit [the hotel] as part of a cross-country

trip from Florida to Maine to Colorado." Id. However, "she later disclaimed any intent to travel to Maine" or the hotel she sued. Id. Justice Thomas concluded that Laufer lacked standing for two reasons: (1) "her claim does not assert a violation of a right under the ADA," id. at 25, and (2) "Laufer asserts no violation of her own rights . . . [due to] [h]er lack of intent to visit the hotel or even book a hotel room elsewhere in Maine," id. at 26. Justice Thomas rejected the notion that tester plaintiffs have standing to "cast [themselves] in the role of a private attorney general" and monitor businesses (in this case, hotel websites) for ADA compliance. Id. Instead, Justice Thomas concluded, "[v]indicating the public interest . . . is the function of Congress and the Chief Executive, . . . not private plaintiffs." Id. (quoting Lujan, 504 U.S. at 576) (internal quotation marks omitted).

Summarizing these four opinions, in both Gaylor and Mosley, the plaintiffs alleged they had previously visited the businesses they sued and encountered barriers to access. See Gaylor, 582 Fed. App'x at 578-80; Mosley, 942 F.3d at 755. They further plausibly alleged a desire to return to the areas where those businesses were located, supported by allegations of their personal ties to those areas. See Gaylor, 582 Fed. App'x at 580-81; Mosley, 942 F.3d at 758. By contrast, Brintley and Acheson both concerned plaintiffs who performed solely online searches and made no allegations, or disclaimed their allegations, of future plans to patronize the businesses. See Brintley, 936 F.3d at 493; Acheson, 144 S.Ct. at 23 (Thomas, J., concurring).

The Court reviews the allegations here against these four important ADA standing cases. Jordan alleges that "[o]n or about September of 2022, [Jordan] attempted to but was deterred from patronizing and/or gaining equal access as a disabled patron to the Avis Car Rental." (Doc. No. 1 ¶ 11). He also alleges that he "lives within thirty (30) miles" of the Avis Car Rental and "[b]ecause the [Avis] is located on US HWY 41, a Rutherford County thoroughfare that he frequents

11

routinely, [Jordan] is routinely where the [Avis] is located and travels in and about the immediate area of the [Avis] numerous times every month, if not every week." (Id. ¶ 13). He does not, however, allege any facts explaining his past or future rental car needs. Jordan additionally alleges that he "has visited, i.e. attempted to patronize, the [Avis] on multiple prior occasions" and "intends on revisiting the [Avis] to enjoy the same experiences, goods, and services available to [Avis's] non-disabled patron[s] as well as for Advocacy Purposes, but does not intend to continue to repeatedly re-expose himself to the ongoing barriers to equal access and engage in the futile gesture of attempting to patronize the [Avis]." (Id. ¶¶ 15-16).

The Court finds that, by the skin of his teeth, Jordan has met the standing requirements of pleading future likelihood of injury necessary in a case such as this, where the primary relief sought is an injunction. See Mosley, 942 F.3d at 756. Like the plaintiffs in Gaylor and Mosley, Jordan alleged his connection to the area where the Avis Car Rental is located and his intent to patronize that business in the future once barriers to his access are removed. (See Doc. No. 1 ¶¶ 13, 15-16). These allegations distinguish him from the plaintiffs in Acheson and Brintley, who either made no allegations or later disclaimed their allegations that they intended to patronize the businesses they sued.

Future likelihood of injury, however, is only one of two components of standing that Jordan must plead. He must also allege—as every plaintiff must—that he has been previously injured by the ADA violations that are the subject of his complaint. Here, Jordan does not meet the plausibility test. He never offers the circumstances surrounding his need to rent cars. He alleges only that he "recently traveled to the [Avis Car Rental] as a patron and as an independent advocate for the disabled, encountered and/or observed the barriers to access[,] . . . engaged those barriers where physically possible, [and] suffered legal harm and legal injury." (Doc. No. 1 ¶¶ 17, 31). As

12

the Court explained during oral argument, this allegation of injury is a conclusory statement. (See Doc. No. 45 at 9:11-19, 11:1-20, 12:3-18, 23:3-9, 25:15-24). Moreover, Jordan's counsel admitted that the Complaint does not explain Jordan's injury. (Id. at 25:15-20). Simply put, the Complaint's allegations do not describe what, if any, injury Jordan encountered when he visited the Avis Car Rental. It is not enough for Jordan to have suffered a statutory injury under the ADA; he must also have suffered an Article III injury to have standing to bring his claims. See Brintley, 936 F.3d at 492 (citing Roberts v. Hamer, 655 F.3d 578 (6th Cir. 2011)). Without any non-conclusory allegations of injury, the court is "deprive[d] . . . of power over the matter." Id. at 493.

### 2. Notice Pleading Standard

To state a claim under the ADA, a plaintiff must allege "(1) that [he] is disabled within the meaning of the ADA; (2) that defendant[] own[s], lease[s], or operate[s] a place of public accommodation; and (3) that defendant[] discriminated against [him] by denying [him] a full and fair opportunity to enjoy the services defendant[] provide[s]." Powell v. Columbus Med. Enterprises, LLC, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) (quoting Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008)). As the Court explained during oral argument, the Complaint fails to allege the third element:

> I do want to walk through the Complaint in fairness to you. I can't tell that you've ever identified the barriers that he encountered. You say barriers. But when I read through the Complaint, I'll just tell you the problem I'm having on his Rule 12 motion is, all I really know is that Mr. Jordan on or about September of 2022 attempted to, but was deterred from, patronizing and/or gaining equal access. Which is a conclusion. So after you plead that . . . now I need the who, what, when, where, and how. That gives me the factual averments to support that. And you really never tell me what physical . . . barriers did he encounter.

(Doc. No. 45 at 8:3-16). The Court cannot credit conclusory allegations without factual allegations to support them. See Binno v. Amer. Bar Ass'n, 826 F.3d 338, 345-46 (6th Cir. 2016). Therefore,

in addition to Jordan's lack of standing, the Court must also dismiss this case for failing to state a plausible claim.

### 3. Attorney Misconduct Allegations

The Court notes the serious allegation in Beasley & Associates' motion that the Complaint is just one example of a pattern of shakedown behavior instituted by the Wampler, Carroll, Wilson & Sanderson law firm and certain ADA monitors, including Jordan. (See Doc. No. 24 at 1-2). The Court notes that Jordan's attorney, Rebecca J. Hutto, and other attorneys at her firm, including J. Luke Sanderson, have filed at least 88 separate lawsuits before this Court since 2019, all or most alleging similar claims to those in this case. According to Beasley & Associates' motion and Ms. Newman's affidavit, these attorneys and testers follow a suspect playbook. First, a tester visits a business to identify non-compliance with the ADA. Next, the law firm sends the business a letter threatening to take legal action and attaching a form complaint. The letter offers an alternative to a lawsuit if the business pays the firm eight thousand dollars "in lieu of attorney's fees" and brings its property into ADA compliance, the firm and tester plaintiff will not sue the business. (See Doc. No. 24 at 3-5; Doc. No. 25 ¶¶ 4-10).

This conduct raises serious ethical issues under the Tennessee Rules of Professional Conduct and the intention of the ADA's civil suit provision. Courts across the country have condemned this shakedown-like behavior. See, e.g., Rodriguez v. Investco, LLC, 305 F. Supp. 2d 1278, 1281-82 (M.D. Fla. 2004) ("The current ADA lawsuit binge is, therefore, essentially drive by economics-that is, the economics of attorney's fees."); Molski v. Mandarin Touch Restaurant, 347 F. Supp. 2d 860, 862-63 (C.D. Cal. 2004) ("The ability to profit from ADA litigation has given birth to . . . a cottage industry. The scheme is simple: an unscrupulous law firm sends a disabled individual to as many businesses as possible, in order to have him aggressively seek out any and

all violations of the ADA. Then, rather than simply informing a business of the violations, and attempting to remedy the matter through conciliation and voluntary compliance, a lawsuit is filed, requesting damage awards that would put many of the targeted establishments out of business. Faced with the specter of costly litigation and a potentially fatal judgment against them, most businesses quickly settle the matter."). One notable recent example is the United States District Court for the District of Maryland's suspension of attorney Tristan W. Gillespie from practicing in that court for six months. See In re: Tristan W. Gillespie, No. 1:21-mc-14, Report and Recommendation (Doc. No. 13) (D. Md. Jun. 30, 2023). After conducting a full investigation, the court concluded that though the ADA "does not allow money damages" and only allows recovery for attorneys' fees and costs, on several occasions, "the agreed-upon settlement sum was larger, sometimes substantially so, than the actual attorneys' fees and expenses logged by the firm." Id. at 9. The court further found that there was a "disturbing pattern of Gillespie having exaggerated and misrepresented work performed or to be performed to opposing counsel during settlement negotiations and to various courts in his fee petition submissions." Id. at 10.

Here, the Court does not know if Jordan's counsel has engaged in the type of conduct the District Court in Maryland condemned. The Court simply notes that it is highly suspicious that Newman reports several businesses have received letters identifying ADA violations and requesting $8,000 as settlement in lieu of attorneys' fees. (Doc. No. 25 ¶¶ 6-10). Given the vague and conclusory nature of the Complaint in this case, the Court finds it hard to believe that counsel accumulated $8,000 in attorneys' fees prior to filing this lawsuit. Moreover, if counsel is sharing any of the settlement fees it collects, that practice violates the ADA's mandate that plaintiffs may only recover attorneys' fees, not money damages, and also violates Tennessee Rule of Professional Conduct 1.8, which prevents an attorney from "enter[ing] into a business transaction with a client

15

or knowingly acquir[ing] an ownership, possessory, security or other pecuniary interest adverse to a client" and "provid[ing] financial assistance to a client in connection with pending or contemplated litigation." Tenn. R. Prof. Conduct 1.8(a) and (e). Given the high number of cases Jordan's counsel has filed in this Court since at least 2019, the Court advises that counsel proceed with caution.

    An appropriate order will be entered.

                                                          _____
                                                          WAVERLY D. CRENSHAW, JR.
                                                          CHIEF UNITED STATES DISTRICT JUDGE